UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : CR No. 1:05-M-75A
:
CHUONG NGUYEN :

**MEMORANDUM AND ORDER**

This matter is before the Court for a preliminary hearing pursuant to Fed. R. Crim. P. 5.1. The hearing was held on June 6, 2005. Agent Troy Niro of the Internal Revenue Service ("I.R.S.") was the only witness who testified at the hearing. The Government and Defendant each offered one documentary exhibit which was admitted into the record.

At a preliminary hearing, the Government must present sufficient evidence to satisfy the Court that there is "probable cause" to believe (1) that a crime has been committed; and (2) that the Defendant has committed it. See Fed. R. Crim. P. 5.1; 18 U.S.C. § 3060(a). The Court's task is "'simply to make a practical, common-sense decision whether, given all the circumstances set forth..., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability' that the defendant has committed a crime." United States v. Mims, 812 F.2d 1068, 1072 (8th Cir. 1987), quoting Illinois v. Gates, 462 U.S. 213, 231 (1983). Although the defendant's innocence or guilt is not determined, the evidence produced by the Government must establish probable cause as to each essential element of the crime charged.

In this case, Defendant is charged by Criminal Complaint with violating 26 U.S.C. § 7202 by willfully failing to deduct, collect, and truthfully account for and pay over to the I.R.S. approximately $636,786.00 in federal income, Medicare and FICA taxes due and owing to the

United States for a certain period of time. The Government identified the essential elements of this charge as requiring proof that (1) Defendant was the person required to or responsible for deducting, collecting, accounting for and paying over to the I.R.S. the payroll taxes in issue; (2) Defendant failed to do so; and (3) Defendant's failure was willful. See United States v. Evangelista, 122 F.3d 112, 120-22 (2nd Cir. 1997) (Section 7202 is violated by willfully failing to either account for or to pay over payroll taxes); United States v. Brennick, 908 F. Supp. 1004, 1017 (D. Mass. 1995) (same).

The primary legal issue before me in this preliminary hearing is whether or not Defendant was a person required to or responsible for collecting, accounting for and paying over federal payroll taxes within the meaning of 26 U.S.C. § 7202. The Government argues that because Defendant controlled the payment of the wages in question, he is a "statutory employer" subject to criminal liability under Section 7202. Defendant argues that he was not an "employer" of the leased workers and thus had no "criminally enforceable duty" to remit federal payroll taxes to the I.R.S.

**FACTS**

At the preliminary hearing, Agent Niro was called as a witness by both the Government and Defendant and testified at length. Agent Niro's Affidavit submitted in support of the Criminal Complaint was offered by the Government and admitted as a full exhibit. Govt.'s Ex. 1. In addition, Defendant offered a two-page exhibit which consists of (1) a one-page agreement between Defendant's employment agency and a manufacturing client which was signed by Defendant; and (2) a one-page advertisement of the services offered by Defendant's employment agency. Def.'s Ex. A.

The evidence presented (including hearsay evidence admissible under Fed. R. Evid. 1101(d)(3)) reveals that Defendant was the "sole owner" of a temporary employment agency

operating in the Woonsocket area known both as Templeymen and Employment Job Center. Govt.'s Ex. 1, ¶ 6. Defendant provided temporary help to area companies and represented to both the client companies and the temporary workers that he would "take care of," or be responsible for, the payment of federal employment taxes for the workers. Govt.'s Ex. 1, ¶¶ 7, 11-15; Def.'s Ex. A, p. 2. Agent Niro testified that Defendant did not "supervise" the day-to-day activities of the temporary workers which was left to the client companies. However, the Templeymen agreement requires the client company to notify Defendant of instances of dissatisfaction with the temporary worker and provides for "substitution upon request." Def.'s Ex. A, p. 1. It also requires the client company to notify Defendant of the desire to hire a temporary worker as a "permanent employee" after "ninety days on this agreement" so the parties "can discuss the matter." Id. Agent Niro also indicates in his Affidavit that Defendant admitted to agents during the investigation that he advertised and told client companies that he was responsible for withholding payroll taxes from the wages of the temporary workers and "admitted that he knew that he was required to withhold and pay taxes over to the Federal Government." Govt.'s Ex. 1, ¶ 10.

As to the payment of wages, Defendant himself paid the temporary workers in cash from his Woonsocket residence. Govt.'s Ex. 1, ¶¶ 14-15. Defendant did not provide the workers with either a Form 1099 or Form W-2 to report the earnings to the I.R.S. Id. The client companies paid Defendant's employment agency by a "lump sum" check on a weekly basis for the work performed as a group by the temporary workers assigned to their companies by Defendant. Id., ¶¶ 11-13. Defendant deposited these "lump sum" checks into business accounts under his control and withdrew funds by way of checks written to "cash" or himself. Id., ¶¶ 6, 8-9. Defendant paid some of the cash

to the temporary workers as wages and spent the remainder on his personal expenses and the "majority...on gambling." Id., ¶ 8-10.

**Discussion**

This case requires analysis of the "triangular relationship between worker, temporary employment agency and client." Vizcaino v. United States Dist. Court, 173 F.3d 713, 723 (9th Cir. 1999) (existence of an employment relationship between worker and temporary agency, and worker and client, are not mutually exclusive). Often in this "triangular" relationship, the client and the temporary agency each take actions with respect to the workers suggestive of an employment relationship. See, e.g., In re Earthmovers, Inc., 199 B.R. 62, 67 (Bankr. M.D. Fla. 1996) (finding temporary agency and client to be "de facto 'co-employers' of [the] workers").

The Internal Revenue Code (the "Code") generally defines an "employer" who is responsible for payroll tax withholding and payment to the I.R.S. as:

> the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person...

26 U.S.C. § 3401(d). In this case, the evidence presented at the preliminary hearing suggests a finding that the client companies were the "statutory employers" under this general definition since the workers performed services directly for them and under their direct supervision and not for Defendant. However, the Code's definition of "employer" contains a relevant exception. If the person for whom the worker performs services "does not have control of the payment of the wages for such services, the term 'employer'...means the person having control of the payment of such wages." 26 U.S.C. § 3401(d)(1).

Under the particular facts presented to me at this preliminary stage of this case, the Government has produced sufficient evidence to establish "probable cause" that Defendant is an "employer" under Section 3401(d)(1) of the Code and violated his obligations as an "employer" under Section 7202 of the Code as alleged in the Criminal Complaint. See United States v. Thayer, 201 F.3d 214, 220 (3rd Cir. 1999) (defendant, as president and majority owner of the "employer," "was properly charged and convicted as a 'person' under Section 7202."). Although the workers did not perform services directly for Defendant or under his direct supervision, the evidence presented to me indicates that Defendant intentionally structured his relationship with the client companies to provide him with unilateral control over the payment of the workers' wages. First, Defendant represented to both the workers and client companies that he was "taking care of" paying the required payroll taxes. Second, Defendant required the client companies to pay his agency in a "lump sum" check for the workers' services as a group. Third, Defendant chose not to pay the workers with payroll checks noting gross pay and deductions (see R.I. Gen. Laws § 28-14-2.1). Fourth, Defendant deposited the "lump sum" checks into a business account under his sole control and withdrew the money into his direct possession with either checks payable to "cash" or to him. Finally, Defendant himself chose to pay the workers in cash at his Woonsocket residence, which gave him direct and sole control over the payment of the wages to the workers. See United States v. Total Employment Co., 305 B.R. 333, 339 (Bankr. M.D. Fla. 2004) (phrase "having control of the payment of such wages" interpreted as meaning the person "actually making payment or having control of the bank account from which payment is made") (citations omitted).

## Conclusion

For the reasons discussed above, this Court concludes that the Government has presented sufficient evidence at this preliminary stage to establish probable cause that Defendant violated 26 U.S.C. § 7202 as charged in the Criminal Complaint.

LINCOLN D. ALMOND
United States Magistrate Judge
June 10, 2005